## Case No. 6,073.

### HARMANSON v. BAIN.

[1 Hughes, 391.] [1]

District Court, E. D. Virginia. May, 1877.

Suit against a Bankrupt — Whether Plea of Setoff is a Suit—Negotiable Paper—"Without Offset"—Agreement between Maker and Payee.

1. The filing of a plea of setoff, in a suit brought by an assignee against a creditor in bankruptcy, is not the maintaining of a suit at law "against the bankrupt," such as is forbidden by section 5105 of the Revised Statutes of the United States, to a creditor who has proved his claim in bankruptcy.

2. Even if it were, section 5073, relating to setoff, and section 5105 must be construed together; and where the bankruptcy court permits the assignee to bring suit in a common law court against a creditor who has proved his claim, it must be implied that that court ipso facto gave leave to the creditor at the same time to withdraw his proof of claim and to plead his offset in the common law suit. Such a plea of setoff is not a "suit" in contemplation of section 5105.

3. If the creditor who has proved his claim fails, or is not allowed, to plead his offset in such a common law suit, and judgment goes against him for a debt against which he has an offset, the court of bankruptcy, having full power over such a judgment, is bound by section 5073 to offset it with the claim of the creditor at its proper value.

4. The words "without offset" in common use on the face of negotiable paper, do not defeat the operation of section 5073, have no value as between the maker and the payee, and as to them are to be construed to have the same meaning as the words "without offset as against a holder by indorsement."

5. Where it was agreed between the maker of a negotiable note and the payee, that the note should be payable in greenback currency, and other debtors of the payee were in the habit of paying their notes in the payee's depreciated certificates of indebtedness, the rate at which the maker of the note may set off such certificates held by himself against the payee is their market value at the time of the maturity of the promissory note.

Action of assumpsit. The Portsmouth Saving Fund Society ceased business as a bank in 1862, in consequence of public invasion. At the close of the war, in the summer of 1865, it resumed business only for purposes of liquidation, and its directors by resolution authorized its cashier to wind up its affairs as far as possible by setoff. From sales of property the society afterwards derived some funds in greenback currency. With part of these greenback funds it afterwards discounted a promissory note for R. T. K. Bain, the defendant, with the understanding that it should be payable in greenback currency. This note, with its renewals, matured on the 29th of August, 1870, its amount being then $2,434. Bain and the firm of Bain & Bro., of which he was a member, held at that time claims founded upon original deposits in the bank to a greater amount than the firm and each of its members owed the bank, whether on notes or claims susceptible to be set off or otherwise. These deposits were then worth 75 to 80 cents on the dollar. For the reason that he or his firm held such deposits, this note of the defendant stood over unpaid until the 30th of April, 1872. At this latter date, partly for a claim for deposits held since 1870, and partly for a claim as a depositor transferred on that day by Bain & Bro. to the defendant, the defendant was a creditor to the bank to the amount of $2,828.48, and was its debtor for the promissory note of $2,434 already mentioned. A petition in involuntary bankruptcy was filed against the society on the 17th of June, 1872, and on the 28th of June, 1872, the society was adjudicated a bankrupt. In its schedule of debts due to it, it itemized this debt of $2,434 due from R. T. K. Bain. In the course of proceedings, that is to say, in April, 1874, R. T. K. Bain, the defendant, through his attorney in fact (who could not, under section 5078 of the Revised Statutes, legally prove for him as a resident creditor), proved his claim in bankruptcy as depositor for $2,828.48, and made no mention of the notes as an offset in the proof of claim. Although it would seem that the defendant appeared by attorney in some of the meetings of the creditors in bankruptcy, and voted by attorney, yet there is no evidence that he recognized the acts of his attorney in fact. Indeed, the attorney in fact had no written power of attorney, and it is admitted that the defendant neither received nor demanded either of two dividends which have been declared to him as a creditor by the assignee and register in the bankruptcy proceedings. It is supposed that the assets in bankruptcy will pay a dividend of fifty per cent. at least. Without demand by the assignee, and without any refusal on the part of the defendant, to recognize the validity of the note for $2,434 due by him, the assignee, August, 1875, brought this suit against the defendant upon the note which has been mentioned, on the common law side of this court. The defendant pleads his offset of $2,828.48, and the court allows his plea of offset to be filed.

James E. Heath and C. Duffield, for plaintiff.

W. W. Old, for defendant.

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

Counsel for plaintiff rely upon section 5105, Rev. St. U. S., and upon Russell v. Owen [61 Mo. 185], and Brown v. Farmers' Bank of Kentucky, 6 Bush. 198.

Counsel for defendant rely upon section 5073, Rev. St.; Colt v. Brown, 12 Gray, 233; Demmon v. Boylston Bank, 5 Cush. 194; 5 Rob. Prac. 998; New Lamp Chimney Co. v. Ansonia Brass Co., 91 U. S. 656; Downer v. Eggleston, 15 Wend. 52; Lechmere v. Hawkins, 2 Esp. 626; Eland v. Karr, 1 East. 375; and Cornforth v. Rivett, 2 Maule & S. 510.

HUGHES, District Judge. The promissory note of the defendant, having been returned by the bankrupt society in its schedules, and not having been disputed by the defendant, and the claim of the defendant intended as an offset to it having been proved in bankruptcy by an attorney in fact (whose action, although illegal, will not be disputed by the defendant unless technical use of it be made against him), all this having been done, the bankruptcy court had full jurisdiction, under the unqualified language of section 4772, to adjudicate the mutual rights of the assignee in bankruptcy and the defendant, upon the rule of setoff established by section 5073. The defendant did not, by any act of his own, render the suit at common law necessary. The bringing of that suit in another forum than the court of bankruptcy was the voluntary act of the plaintiff. The defendant as a creditor was standing upon his right of setoff in the bankruptcy court. By proving his claim there he submitted it to the jurisdiction of that court, and secured it from defeat by the statute of limitations, and he has done no act to put the plaintiff to the necessity of resorting to the common law forum. The plaintiff, by leave expressed or implied from the bankruptcy court, brought this suit on the common law side of the district court; and it must follow, as a corollary, that by the same leave, express or implied, the defendant has been permitted to withdraw his proof of claim in the bankruptcy proceeding and to plead his claim as an offset in this suit. If the court were not so to hold as to its implied leave to either party, the greatest injustice would be done the defendant, in first having permitted, if not invited, him to prove his claim in the bankruptcy court, and then using that fact in bar of a right which the law itself gives him to offset at a proper rate with that claim the debt he owes to the assignee. Section 5105 was never intended to be used for such a purpose. Its object was to confine the creditor to one forum or the other in respect to his claim upon the bankrupt. It must be construed in connection with section 5073 so as to allow him, if the assignee in bankruptcy should resort to any forum other than the bankruptcy court for the assertion of a claim of the estate against him, to use his counter claim there as a setoff. In Catlin v. Foster [Case No. 2,519], so

far was this principle carried, that a creditor who had proved his claim in bankruptcy which had been disallowed by the bankruptcy court, and who had failed to appeal under sections 4980 and 4981, was allowed to plead the claim so rejected as a setoff. In fact, the filing of a plea of setoff in a suit brought by an assignee in bankruptcy is not the "maintaining a suit at law against the bankrupt," such as is forbidden to a creditor who has proved his claim by section 5105.

As to the objection of the plaintiff's counsel, that the plea of setoff was not noted as filed by leave of court within two years from the appointment of the assignee in bankruptcy, that seems to have been merely a clerical omission. But even if the plea of setoff had not been filed until this present hearing, the objection could not be allowed to prevail; because, when the bankruptcy court gave leave to the plaintiff to bring this suit, that leave implied a contemporaneous permission to the defendant to avail himself of the same right of setoff in the common law court under section 5073, which he had secured in time in the bankruptcy proceeding. This question, however, is of little practical importance; for, even if in the common law court the defendant were debarred by section 5105 of the right of pleading his setoff, and judgment were to go against him for the amount of his promissory note, still, even in that case, the judgment being in favor of the assignee in bankruptcy, who is under the control of the court of bankruptcy, that court would nevertheless be bound to apply the rule of section 5073, and set this judgment and the defendant's claim off, the one against the other.

Dismissing, therefore, that branch of the case, I come to consider the more important question: What amount should be allowed the defendant in offset against the plaintiff's demand? The extreme demand of the defendant is, to be allowed the full amount of his claim on account of deposits which he held against the society as of April 30th, 1872, viz., $2,828.48. The extreme demand of the plaintiff is, that defendant should be allowed only the amount of the dividend to which the claim of the defendant will be entitled in bankruptcy, say 50 per cent. The plaintiff bases his proposition on two facts, namely, that the defendant agreed that his note should be payable in greenbacks, and second, that the note purports on its face to be payable "without offset." I think from the evidence that the intention of the society and of the defendant was that the note should not be treated as payable in deposits at their par value, as other creditors of the society were allowed to do in paying off their indebtedness. But it could not have been legally intended by either of the two parties, that in the event of a liquidation in court of the affairs of the society the defendant should not have the right to set off, against the note he owed payable in greenbacks, his own claim against the society at its just valuation.

Some of the many authorities to this effect were cited by the defendant. While the defendant, in my judgment, has not the right to a credit against this note of the full amount of his claim against the society, yet I am bound to allow him a proper percentage of that claim. What that percentage should be, I confess I arrive at in a somewhat arbitrary way. It is conceded, that at the maturity of the note in August, 1870, and on the 30th of April, 1872, some ten weeks before the petition in bankruptcy was filed, the market value of the claim of the defendant was 75 to 80 cents in the dollar. This was about the value of the deposits of the society (when sold in large amounts) down to the time when the proceeding in bankruptcy was about to be commenced, which proceeding naturally depressed the market price afterwards. I shall, therefore, on the principle that the defendant, having had no agency in, is in no wise responsible for the consequences of the bankruptcy proceeding, allow his offset at the rate of 70 cents in the dollar, and will give judgment on that basis. As to the words "without offset" used in the body of the negotiable note, they are to be read as if they were "without offset as against a holder by indorsement." Their sole purpose and effect is to give negotiability and credit to the paper. They are not treated by the courts as having any effect between the maker and the original payee of the paper. They have no effect or value in this suit, and cannot be construed to nullify section 5073 of the Revised Statutes.