BLACKMORE v. PARKES et al.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1897.)

No. 457.

1. FRAUDULENT CONVEYANCE—CONSIDERATION—PREFERRING CREDITORS.

A conveyance of real estate, made in good faith by a failing debtor, in consideration that the grantee assumes and agrees to pay bona fide debts of the grantor to an amount near the value of the property, will not be set aside as in fraud of other creditors, although it appears that the purpose was to prefer certain creditors.

2. SAME—KINDRED OF DEBTOR AND CREDITOR.

The fact that a son of an insolvent debtor, who conveyed property in consideration of the assumption of certain of his debts by the grantee, subsequently purchased the principal part of the debts assumed, is not of itself sufficient to establish fraud in the conveyance.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

Champion, Head & Brown, for appellant.

Henderson & Eggleston, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge. This is a bill by a judgment creditor of the defendant J. L. Parkes to reach and subject to the satisfaction of complainant's judgment certain real estate in the town of Franklin, Williamson county, Tenn., theretofore conveyed by Parkes to the defendant J. P. Hanner by deed bearing date March 12, 1886. The deed mentioned was duly registered, and conveys to the said Hanner two lots and storehouses in consideration of the assumption and payment by him of certain debts particularly described as due from the grantor to the several persons named in the deed, and aggregating some $6,000. This bill was filed October 25, 1894. The other defendants to the bill are J. L. Parkes, Jr., a son of the grantor, and W. A. Roberts, to whom a lease of one of the storehouses has been made by the grantee with an option of purchase. It appears that in 1892 one of the storehouses so conveyed to said Hanner was sold by the grantee to Maria and Mattie Vaughn in consideration of $3,000 paid to said Hanner, and deed with covenants duly executed and registered. The bona fides of this purchase by the Misses Vaughn is not assailed, and the purchasers are not, therefore, made parties. In this situation no further consideration need be given to so much of complainants' bill as seeks to set aside the conveyance of that particular property to the defendant Hanner. So far as the defendant W. A. Roberts has acquired any interest in the remaining storehouse by virtue of his contract of purchase and under his lease, he is entitled to protection as an innocent purchaser without notice of any fraudulent purpose; and complainants practically concede that any recovery by them must be subject to his rights under his lease and option, the purchase money to be paid by him under his contract

standing in the place of the property, should he exercise his option of purchase. Subject to the equitable rights of said Roberts, we come to the question as to whether the circuit court erred in dismissing complainants' bill. The conveyance to Hanner was upon consideration that he should assume and pay off certain specified debts of the grantor, aggregating $6,000. The bona fide character of these debts is abundantly established, and it is also shown that the property conveyed did not exceed in value the consideration upon which the deed was made. The grantor, J. L. Parkes, was largely indebted at the time of this transaction, and was involved in liabilities upon which suit was then pending which culminated in a large judgment. He then owned the property described in that deed, his home place, and a third parcel of land, containing some five acres. The home place was valued at between $3,000 and $4,000, and was at the same time conveyed by deed to his son, the defendant J. L. Parkes, Jr., in consideration that he would assume and pay off debts of the grantor named in the deed aggregating $3,600. The third parcel was also conveyed at same time to one W. J. Petway in payment of a debt due the grantee of $1,000. The evidence makes it clear that all the debts described as due from the grantor in these several conveyances were in fact existing bona fide debts, and that the property conveyed did not appreciably exceed the debts assumed or paid as the consideration by the several grantees. This agreement by the vendee, Hanner, to pay off the debts of the vendor specified as the consideration for the deed, made the vendee personally liable in equity to the creditors of the vendor, and was a promise to pay his own debt to the persons designated by the vendor. This assumption constituted the purchase price which, by direction of the vendor, was made payable to the creditors, of the latter. O'Conner v. O'Conner, 88 Tenn. 76–82, 12 S. W. 447; Moore v. Stovall, 2 Lea, 548; Lawrence v. Fox, 20 N. Y. 268; Burr v. Beers, 24 N. Y. 178; Thompson v. Bertram, 14 Iowa, 476; Thompson v. Thompson, 4 Ohio St. 333; 3 Pom. Eq. Jur. § 1206; Crawford v. Edwards, 33 Mich. 354.

Though no express lien was retained to secure the payment of the debts thus assumed by the vendee, yet an equitable lien arose, and the land, in equity, would be charged with the payment of the purchase money, which constituted the consideration upon which the conveyance was made. 3 Pom. Eq. Jur. § 1206; Railroad Co. v. Houston, 85 Tenn. 224, 2 S. W. 36; Crawford v. Edwards, 33 Mich. 354; Miller v. Thompson, 34 Mich. 10. The intention that the land should be subject to an equitable lien to secure the payment of the debts assumed as the purchase price is strongly implied by the circumstances. That the impulse which led to this conveyance was an intent to prefer the debts named in this deed is clear. But this is not evidence of fraud, nor was such a preference prohibited by the law of the state. That the grantor and grantee were close relations and intimate friends is sometimes a circumstance from which fraud may be inferred. It is, however, a circumstance insufficient in itself alone, and in this case clearly of no moment, in view of the evidence as to the bona fides of the debts assumed, and the relation the amount of these debts bore to the value of the property. That the grantee

was permitted to manage and control the property conveyed, and to receive the rents, was a circumstance needing explanation. But the evidence is clear that no such agreement preceded the deed. Pending an advantageous sale, Hanner, by a subsequent agreement, permitted the grantor to collect the rents and look after the property, the latter agreeing to keep down the interest on the debts and keep the property insured and in repair by applying the rents to these objects. This seems to have been a purely business arrangement, and applied only so long as suited the wishes of both, and was not objectionable to the creditors interested. The proceeds of the sale of the storehouse sold to the Misses Vaughn were applied to the payment of such of the debts as were most pressing. The remaining property was conditionally sold to the defendant Roberts, but has not yet been confirmed.

The chief attack upon the conveyance, so far as this unsold property is concerned, arises from the fact that Parkes, Jr., claims to be the owner of a majority of the debts assumed by the grantee, Hanner. For complainants it is insisted that J. L. Parkes, Jr., holds these claims for his father, and has in fact paid them off for his father, and that the latter has thereby acquired an interest in the property which complainants may subject to their judgment. The evidence fails to establish this contention. Parkes, Jr., is shown to have been for several years a thrifty, energetic, young business man, and to have made a series of transactions out of which he realized a profit sufficient to enable him to buy in these claims. His evidence is that certain of these creditors became urgent for their money, and were annoying his father; that his uncle, Dr. Hanner, had not been able to make a satisfactory sale of the property, and was anxious to save himself and the grantor by procuring as large a price as possible that he might pay off all the debts assumed. To satisfy these creditors and prevent a forced sale of the property, Parkes, Jr., says he paid off the pressing creditors, and took an assignment to himself, believing the security ultimately good, and being willing to thus relieve both his father and uncle from the urgency of the creditors whose claims he bought. His testimony is uncontradicted, and is in part confirmed by other witnesses, and we see no sufficient reason, on the proof in this record, for doubting his motives or questioning his veracity. There is absolutely no affirmative evidence that the money used in buying these claims was furnished by Parkes, Sr., or that the latter was to acquire any interest by the transaction. The filial affection of the son quite accounts for his willingness to invest his own means in a way which would relieve the urgency of his father's creditors, and at the same time enable Dr. Hanner to sell the property to the best advantage, and thus save himself from loss through a transaction into which he seems to have entered from kindly consideration towards his relative, Parkes, Sr. We cannot say that the complainants have not shown many circumstances calculated to arouse the suspicion that J. L. Parkes had either retained or subsequently acquired some interest in the property conveyed to Hanner. Neither can we say that all of these circumstances have been explained with absolute satisfaction. But upon the whole case we reach the conclu-

sion that complainants have not made out a case which would justify this court in reversing the action of the circuit court. It is therefore ordered that the decree be affirmed.