GOODYEAR SHOE MACHINERY CO. OF PORTLAND, ME., v.
DANCEL et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1902.).

No. 26.

**1. PATENTS—CONTRACT OF ASSIGNMENT—AGREEMENT TO PAY ANNUITY TO ASSIGNOR.**

Under a contract by which the assignee of a patent agreed to pay to the assignor in each year while such patent "remains in force as a valid patent the sum of $5,000 as an annuity," the right to such payments does not cease on the death of the assignor, because they are termed an "annuity," but payment may be enforced by his legal representatives so long as the patent remains in force.

**2. CONTRACTS—PARTIES—ACTION AT LAW AGAINST ASSIGNEE.**

An agreement by the assignee of a contract, by which he assumes the obligations of his assignor thereunder, does not make him a party to the contract, so that he may be sued thereon at law by the other party; nor can such an action be maintained upon the doctrine of subrogation, which pertains to equity only.

**3. STIPULATIONS—MATTERS CONCLUDED.**

A stipulation by the defendant in an action at law to waive a jury and go to trial before the court is not a waiver of his right to insist that plaintiff has no right of action at law.

**4. FEDERAL COURTS—DISTINCTION BETWEEN LAW AND EQUITY—EFFECT OF STATE LAWS.**

Neither the statutes nor decisions of the courts of a state can confer authority on a federal court sitting therein to exercise equitable jurisdiction in actions at law.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 106 Fed. 551, and 109 Fed. 333.

Edwards H. Childs, for plaintiff in error.

Roger Foster, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error was the defendant in the court below, and brings this writ of error to review a judgment for the plaintiffs. The action was tried in the court below without a jury, a jury having been waived by the parties; and upon the motion of the plaintiffs the trial judge ordered a judgment in their favor upon the pleadings. The action was brought by the administrators of Christian Dancel to recover the unpaid installments alleged to be due upon a written contract between Dancel and the Goodyear Shoe Machine Company executed January 2, 1892.

The assignments of error present the question whether by the terms of the contract the installments were payable only during the life of Dancel. He died in October, 1898, and the unpaid installments accrued subsequently to that date.

As judgment was ordered upon the pleadings, all the averments of the answer, except such as state legal conclusions, are to be taken as true. The defendant by its answer alleged that the contract was a Massachusetts contract, and that by the law of that state the undertaking was a promise to pay during Dancel's life only. This court takes

judicial notice of the law of Massachusetts, both statutory and unwritten, and is not concluded by the averments of the answer in respect thereto. Chicago & A. R. Co. v. Wiggins Ferry Co., 119 U. S. 615, 7 Sup. Ct. 398, 30 L. Ed. 519. Whether the installments were payable only during the life of the promisee is a question depending upon the true meaning of the contract, and there is no statute of Massachusetts affecting the question, and there are no controlling adjudications of the courts of that state determining the legal construction of such a contract as the present.

The contract, after reciting that the Goodyear Company had previously become the owner of certain letters patent of the United States issued to Dancel, and of an application made by Dancel for another patent, and that Dancel had by an assignment of even date with the contract transferred to the Goodyear Company letters patent of the United States dated September 8, 1891, and numbered 459,036, granted him for an improvement in sewing machines, contained the following covenant:

"(1) That the Goodyear Company, in consideration of said assignment and of the agreements of said Dancel herein contained, doth agree to pay the said Dancel in each year while the United States letters patent No. 459,036 remain in force as a valid patent, the sum of $5,000 as an annuity, such annuity to be payable monthly in installments of $416⅔ each."

There would be no doubt of the meaning of the contract if the words "as an annuity" had been omitted in the covenant. It would have been a promise to pay a stated annual sum during the term of the patent, or as long as the patent should be enforceable as a valid grant, and would have inured to the benefit of the administrators throughout that period; but these words import uncertainty into it.

An annuity is defined as "a stated sum, payable annually" (Pearson v. Chace, 10 R. I. 455), or as "a yearly payment of a certain sum of money, granted to another in fee, for life, or for years" (Kearney v. Cruikshank, 117 N. Y. 95, 22 N. E. 580; Bartlett v. Slater, 53 Conn. 102, 22 Atl. 678, 55 Am. Rep. 73). It has usually been judicially defined in construing testamentary dispositions, marriage settlements, deeds of separation, and promises of a nature to imply the notion of personal enjoyment on the part of the promisee. In Blewitt v. Roberts, 1 Craig. & P. 274, Lord Chancellor Cottenham said:

"An annuity may be perpetual, or for life, or for a period of years; but, in the ordinary acceptation of the term used, if it should be said that a testator had left another an annuity of £100 per annum, no doubt would occur of the gift being for the life of the donee."

The authorities are collated and their result stated in 2 Am. & Eng. Enc. Law (2d Ed.) 393, as follows:

"The duration of an annuity depends, as a general rule, upon the construction of the instrument by which it is created. Where there is nothing to be found beyond a simple gift of an annuity, and there is no explanatory language as to its duration, the annuitant takes for life only."

The Massachusetts decisions cited by the plaintiff in error are to the same effect. On the other hand, it is abundantly settled by the authorities that a bequest or grant of an annual sum, with words of limitation, such as for a definite term or for the life of another person, does not lapse with the life of the annuitant, but survives to his per-

sonal representatives; and the words of limitation fix its duration. This was decided by Lord Chancellor Hardwicke in the early case of Savery v. Dyer, 1 Amb.' 139, and is said in Montanye v. Montanye, 29 App. Div. 377, 51 N. Y. Supp. 538, never to have been questioned since. It is only when there is no explanatory language as to its duration that an annuity is limited to the life of the annuitant.

The plaintiff in error insists that the covenant should be read as if the words "as an annuity" were the only words signifying the duration of the monthly payments, or as if they qualified the promise to pay during the life of the patent and limited the duration of the payments to the life of Dancel. If it had been the intention of the parties that the payments should cease with the life of Dancel, that intention could have been easily expressed in a manner to make it perfectly clear by inserting, after the words "doth agree to pay to said Dancel each year," the words "during his life." We think such was not the intention of the parties.

Looking at the subject-matter of the contract, we find it to be one that concerns the sale and purchase of a patent, the term of which had 16 years to run from the previous September, but which might at some earlier date cease to be valid. The value of the patent depended measurably, perhaps mainly, upon the duration of the monopoly created by it. It could be estimated upon the basis of its yearly value, or out and out and irrespective of that basis; but its value was not in the least dependent upon the life of the patentee. In fixing the purchase price, it is fair to assume that the parties intended to fix a price which they regarded as a fair equivalent for the value of the patent. It is obvious that they did not intend to fix the price upon the basis of an out and out value; and it would seem that their dominant thought was to adopt the other standard of value,—its yearly value for the period of its duration,—and that they estimated this at $5,000 a year.

If the clause had read, "The Goodyear Company doth agree to pay to said Dancel an annuity of $5,000 in each year while the patent remains in force," there would be no fair room to doubt that the annuity would have been payable so long as the patent remained in force. We think it should be so read. The term "as an annuity" meant "annuity" merely, and not "but only as an annuity." It was doubtless unnecessary to use it; but tautology is so frequent in private, as well as public, documents, and in statutes, that undue emphasis ought not to be placed upon the use of redundant words and phrases.

The assignments of error also present the question whether the promise can be enforced against the present defendant. The complaint alleges that the defendant (a Maine corporation) purchased the letters patent from the Goodyear Company (a Connecticut corporation), and in an instrument of assignment to it, and in consideration thereof, agreed to assume all the obligations of the Goodyear Company to pay the annuity provided for in the contract between the latter and Dancel. This averment is admitted by the answer. The effect of this agreement was to create the relation of principal and surety between the defendant and the Connecticut corporation, and as between those parties the defendant became primarily liable for the obli-

gations arising from the contract of the Goodyear Company with Dancel; and upon the equitable doctrine that a creditor shall have the benefit by subrogation of any obligation or security given by the principal to the surety for the satisfaction of the debt, the plaintiffs, if this action had been brought in equity, would have been entitled to enforce the covenant of the defendant. According to the decisions in Second Nat. Bank of St. Louis v. Grand Lodge of Free & Accepted Masons of Missouri, 98 U. S. 123, 25 L. Ed. 75, Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, 27 L. Ed. 903, and Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667, the plaintiffs could not maintain an action at law against the defendant upon the covenant. The latter case was a bill in equity by a mortgagee against the grantee of the land subject to the mortgage, which mortgage the grantee had agreed to pay. It was held after full examination of the authorities that the mortgagor could not sue at law. It was also held that in equity, as at law, the contract of the purchaser to pay the mortgage, being made with the mortgagor and for his benefit only, created no direct obligation of the purchaser to the mortgagee; but it was also held that, upon the doctrine that the mortgagee was entitled as a creditor to the benefit of any obligation or security given by the purchaser to the mortgagor for the payment of the debt, he could enforce the agreement to pay the mortgage in a court of equity. The cases of Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, 34 L. Ed. 210, and Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118, are to the same effect.

The circumstance that the defendant consented to go to trial before the court as a court of law was not a waiver of his right to insist that the plaintiffs had no right of action at law. In Willard v. Wood, supra, the action was at law, and was tried in the court below upon an agreed statement of facts, with a stipulation that the plaintiff should have judgment for a specified sum if upon the agreed statement the court held that he was entitled to recover. The court, after pointing out that in the court below, as in the circuit courts of the United States, the jurisdiction in equity is distinct from the jurisdiction at law, and that equitable relief could not be granted in an action at law, said:

"A statement of facts agreed to by the parties, or, technically speaking, a case stated, in an action at law, doubtless waives all the questions of pleading or form of action which might have been cured by amendment; but it cannot enable a court of law to assume the jurisdiction of a court of equity."

It is hardly necessary to state that the law of the remedy is not to be determined by the decisions of the courts of the state in which the action was brought, and that neither the decisions of its courts nor the statutes of New York can confer authority upon the federal courts sitting within that state to exercise equitable jurisdiction in actions at law. State legislatures cannot abolish in the federal courts the distinctions in actions at law and in equity by abolishing such distinctions in their own courts. Swayze v. Burke, 12 Pet. 11, 9 L. Ed. 980; Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859; Jones v. McMasters, 20 How. 8–22, 15 L. Ed. 805; Fenn v. Holme, 21 How. 481, 16 L. Ed. 198; Thompson v. Railroad Co., 6 Wall. 134, 18 L. Ed.

765; Railroad Co. v. Paine, 119 U. S. 561, 7 Sup. Ct. 323, 30 L. Ed. 513.

We conclude that the plaintiffs were not entitled to recover, because they could not sue at law upon the promise made by the Maine corporation to the Connecticut corporation. The judgment must therefore be reversed, and it is

So ordered.