DANCEL et al. v. GOODYEAR SHOE MACHINERY. CO. OF PORT-LAND, ME.

(Circuit Court, S. D. New York.   Ferbuary 2, 1905.)

**1. ASSIGNMENT OF CONTRACT—ASSUMPTION BY ASSIGNEE—CONSTRUCTION OF AGREEMENT.**

A bond executed by one corporation to another, whose entire property and assets it had purchased, by which it covenanted to pay and discharge all debts, liabilities, and obligations of the obligee, and to adopt, perform, and fulfill all of its contracts and engagements, creates a direct and primary liability of the purchaser in equity on a contract assigned as a part of the assets, which is not affected by a further covenant therein to indemnify and hold harmless the obligee and its directors and stockholders.

**2. SAME—SUIT TO ENFORCE—PARTIES.**

In such case, where the selling company, after transferring to the purchaser all of its property, good will, books, and papers, and surrendering its capital stock, transacted no further business and held no. more meetings of its directors or stockholders, whether legally dissolved thereby or not, it is not an indispensable party to a suit in equity against the purchasing company to enforce its liability on such contract.

**3. EVIDENCE—RECORDS OF CORPORATION—AUTHENTICATION.**

Where a corporation, on a sale of its property and assets to another corporation, also caused to be transferred to the latter all of its stock and its books and records, which thereafter remained in the possession and under the control of the purchasing company, entries in such books relating to the transaction are admissible against such company in a suit, without further authentication.

**4. EQUITY—DECREE—PROVISION FOR FUTURE INSTALLMENTS TO BECOME DUE ON CONTRACT.**

A decree in equity, giving judgment on a contract by which the defendant is obligated to pay monthly installments, not all of which are due, may provide, also, for future installments, and that judgment may be entered for the same as they fall due, on application to the court and notice to defendant's solicitor.

In Equity.
See 120 Fed. 839; 128 Fed. 753.

J. Philip Berg (Roger Foster, of counsel), for complainants.
Edward H. Childs, for defendant.

HAZEL, District Judge. This action was brought to recover unpaid installments alleged to be due upon a written contract, dated January 2, 1892, between complainants' intestate and the Goodyear Shoe Machinery Company of Hartford, Conn. The contract relates to an assignment to said company of letters patent issued to Christion Dancel, and contains the following provision:

"That the Goodyear Company, in consideration of said assignments and of the agreements of said Dancel herein contained, doth agree to pay to said Dancel in each year, while the United States letters patent No. 459,036 remain in force as a valid patent, the sum of five thousand dollars, as an annuity, such annuity to be payable monthly in installments of four hundred and sixteen and two-thirds (416⅔) dollars each."

On March 9, 1893, during the lifetime of Dancel, the Goodyear Shoe Machinery Company of Hartford, Conn. (hereafter referred to as the "Connecticut Company"), transferred to the defendant, a Maine corporation, by written bill of sale, all its property, including the Dancel patent and "all books of account, good will, and all other property and rights owned by it." Thereupon the defendant executed and delivered to the Connecticut Company a bond, which provided that the "obligor shall pay and discharge all debts, liabilities, and obligations of the obligee," and "shall adopt, perform, and fulfil all contracts and engagements now binding on" the Connecticut Company. The defendant expressly agreed to assume and pay the costs and expenses of winding up the corporate affairs of the Connecticut Company, and also to indemnify and hold harmless the obligee and its directors and stockholders. Christian Dancel, to whom installments under the contract were payable, died on October 12, 1898. The installments were paid to Dancel during his lifetime, and one payment was made after his death. On August 15, 1900, the defendant in writing refused to make further payments, claiming that the obligation ceased with the death of Dancel. The contract does not contain words of succession by inheritance. That it was the intention of the contracting parties that the sum of $5,000 annually should be paid in monthly installments to Dancel during the life of the patent, and upon his death to his surviving personal representatives, has been squarely decided by the Circuit Court of Appeals, which previously considered this point. Goodyear Shoe Machinery Co. v. Dancel, 119 Fed. 692, 56 C. C. A. 300. The appellate court states:

"It is abundantly settled by the authorities that a bequest or grant of an annual sum, with words of limitation, such as for a definite term or for the life of another person, does not lapse with the life of the annuitant, but survives to his personal representatives; and the words of limitation fix its duration. This was decided by Lord Chancellor Hardwicke in the early case of Savery v. Dyer, 1 Amb. 139, and is said, in Montanye v. Montanye, 29 App. Div. 377, 51 N. Y. Supp. 538, never to have been questioned since. It is only when there is no explanatory language as to its duration that an annuity is limited to the life of the annuitant."

Such construction of the annuity provision of the contract is the law of this case and binding upon this court. The defenses principally relied upon are nonjoinder of party defendant, in that the Connecticut Company is an indispensable party to the suit, and

that the defendant did not assume the debts and obligations of that corporation and is not primarily liable therefor. The answer also challenges the jurisdiction of the court, which objection necessitates a short explanation.

This cause was originally brought at law in the state court, and was removed to this court because of diverse citizenship. The original answer admitted the assumption by the defendant of the debts and obligations of the Connecticut Company, but denied that the contract survived Dancel's death. Upon trial, judgment was directed for plaintiffs upon the pleadings, and an appeal therefrom was duly taken. The Circuit Court of Appeals decided that the effect of the agreement between the defendant and the Connecticut Company was to create the relation of principal and surety, with the result that the defendant became primarily liable for the obligations arising from the contract with Dancel, and it was held that the remedy of the plaintiffs was in equity, and not at law. The judgment was accordingly reversed, and the complaint dismissed, without prejudice, however, to an application by plaintiffs for leave to replead in equity. Permission to thus reframe the complaint into a bill of equity having been allowed, defendant interposed a plea to the jurisdiction on the ground that, as no equity process had been served, article 3, § 2, of the federal Constitution had been violated. The plea was overruled. Therefore the question of jurisdiction need not be again passed upon.

Defendant contends that when the action was at law the question of parties was immaterial, while in equity a proper enforcement of the covenant is dependent upon the jurisdiction of the court over all parties whose rights may be affected by the decree sought; that, in the absence of the Connecticut Company, neither its obligation to complainants nor the assumption of such liability by the defendant can be established. That this court sitting in equity is unable to enforce a contract of indemnity, in the absence of a party whose rights are necessarily affected by the decree, is beyond dispute. Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 422, 33 L. Ed. 792; 16 Am. & Eng. Ency. Law (2d Ed.) 176; Turk v. Ridge, 41 N. Y. 201. This principle, however, is inapplicable here. The distinction between a right of recovery under a covenant in a bond of indemnity and an agreement to pay the debts and assume the obligations of the indemnitee is clear. Such covenant to indemnify does not impair a covenant to pay. Wicker v. Hoppock, 73 U. S. 94, 18 L. Ed. 752; In re Negus, 7 Wend. 503; Pork v. Jackson, 17 Johns. 239. To the same effect see Johnson v. Risk, 137 U. S. 300, 11 Sup. Ct. 111, 34 L. Ed. 683.

Complainants' chief contentions are based upon the asserted dissolution of the Connecticut Company and the surrender of its capital stock, together with its inertness since the sale of its assets and the assumption by the defendant of the contract in question. The principal question, however, is whether the defendant assumed the obligations of the contract to pay the annuity, and not whether it agreed merely to indemnify the Connecticut Company. That it did so assume the contract and agree to discharge the selling com-

pany from liability is established by the proofs. As previously stated, the Connecticut Company transferred to the defendant all its property, including the Dancel patent, the seal of the corporation, and all its books and papers. Certificates of stock in the defendant company were issued to all the stockholders in exchange for their stock in the Connecticut Company. The defendant paid the installments to Dancel during his lifetime, and even made one payment thereafter. The bond obligated the defendant to fulfill all contracts binding upon the Connecticut Company and to pay the expenses for actually winding up its affairs. Its provisions, fairly construed in connection with the facts proved, are corroborative of the proposition that the defendant equitably assumed the obligations of the contract in suit. It is shown that certain officers and directors of the selling company became officers and directors of the defendant, or the United Shoe Machinery Company, which subsequently acquired a majority of the stock and property of the defendant. No assets were retained by the Connecticut Company, and there are no claims outstanding against it. Presumably the defendant paid all the debts, as agreed, thus emphasizing an assumption of liability pursuant to the selling arrangement. There has been no meeting of the stockholders or directors of the Connecticut Company, nor has any business been transacted. It appears, by apparently contemporaneous entries in its account books under date of March 9, 1893 (which books after the transfer were kept by the defendant), that said company was dissolved and a new corporation, the defendant, organized. It also appears from such books that a debit and credit balance, including an amount due Dancel, was transferred to appropriate accounts relating to the business of defendant.

The defendant contends that the statements contained in the books of account are not properly authenticated; it not being shown by whom or in what manner they were kept. It is not a stranger to the transaction, however. Hence this rule cannot be successfully invoked. It had access to the books in question at all times, with exclusive possession and full power to examine the same. Therefore it is presumed to have had such knowledge of their contents as justified their reception as evidence against it. 2 Wharton on Evidence, 321; McCord v. Manson, 17 Ill. App. 118; Shepard v. Bank of Missouri, 15 Mo. 143; Terry v. McNeil, 58 Barb. 241; Abbott's Trial Evidence (2d Ed.) pp. 60, 61. The witness Howe, an officer of the defendant and former counsel of the Connecticut Company, testified to the effect that the earlier corporation was not in fact dissolved, although admittedly no business has been transacted by it since the sale in 1893; that there was no assumption of the contract; and that the defendant's liability depended wholly upon the indemnity bond. This evidence is not entitled to probative force; for, as indicated, a different intention is clear. Whether the company, by disposing of all its property, surrendering its capital stock, and abandoning its business, was dissolved, as evidently was contemplated, is not a necessary question for decision. The facts, considered in connection with the broad lan-

guage of the bond, clearly show an intent to assume and pay all the obligations of the Connecticut Company, and entitle the complainants to enforce the covenant against the defendant. That may be done, as stated in Goodyear Shoe Machinery Co. v. Dancel, supra, "upon the equitable doctrine that a creditor shall have the benefit by subrogation of any obligation or security given by the principal to the surety for the satisfaction of the debt." This determination disposes of the important question presented.

The next point for consideration is whether the Connecticut Company, which confessedly is not within the jurisdiction of the court, is an indispensable party to the suit. The facts preclude the view that such company has an interest in the litigation. Even conceding it to be a proper party to the action, it certainly is not an indispensable one. The general rule, as stated in Encyclopedia of Pleading and Practice, vol. 15, p. 615, that where a necessary and indispensable party is beyond the jurisdiction, or for some other reason cannot be brought before the court, the court cannot proceed, does not strictly apply where, as here, the defendant, in consideration of the transfer to it of the property of the Connecticut Company, primarily assumed the obligations of the contract in question; the assignor retaining no further interest therein. Story on Eq. Pl. § 81.

The complainant is entitled to a decree directing the payment of the installments falling due from month to month, beginning November 30, 1898, with interest and costs. The judgment may also contain a provision for payment of the monthly installments to fall due, and, unless such payment is made, judgment may be entered for such unpaid installments upon application to this court and notice to defendant's solicitor. Libby v. Rosekrans, 55 Barb. 202; Fleming v. Soutter, 6 Wall. 747, 18 L. Ed. 847.

A decree may be entered accordingly.