## COBB et al. v. INTERSTATE MORTGAGE CORPORATION.

Circuit Court of Appeals, Fourth Circuit.
July 5, 1927.

No. 2578.

**1. Equity ⬄361—Averments of bill must be taken as admitted on motion to dismiss.**

On motion to dismiss bill of complaint, averments of bill must be taken as admitted.

**2. Fraudulent conveyances ⬄241(2)—Ordinarily, creditors cannot sue in equity to set aside fraudulent conveyance until obtaining judgment.**

Ordinarily, suit in equity cannot be maintained by creditors to set aside a fraudulent conveyance or to subject property of debtor to satisfaction of their claims until judgment has been obtained and execution returned unsatisfied.

**3. Creditors' suit ⬄16—Creditors may sue to enforce equitable liens or trusts without first obtaining judgment and having execution returned unsatisfied.**

Where creditor's only remedy is in equity, as where he seeks to establish a liability which only equity will recognize, or to enforce an equitable lien or trust, it is not necessary that judgment be obtained and execution returned unsatisfied before suing.

**4. Corporations ⬄547(1)—Creditors of corporation assigning assets may sue assignee in equity to enforce agreement assuming liabilities in consideration of transfer.**

Where corporation to whom assets of another corporation were transferred assumed all liabilities of assignor, creditors, though having no right to sue assignee on their claims at law, had right to sue in equity to enforce in their own behalf promise made to assignor for their benefit, on theory that, as a result thereof, assignee became a surety, and that to avoid circuity of action equity will enforce obligation of principal debtor for benefit of creditor.

**5. Corporations ⬄542(4)—Equitable lien arose on promise of corporate assignee of corporate assets to assume assignor's liabilities, though no express lien was retained.**

When corporate assets were transferred to another corporation under a promise on part of assignee to assume assignor's liabilities, though no express lien was retained to secure debts thus assumed, an equitable lien arose, and the assets transferred were chargeable with payment of liabilities, assumption of which constituted consideration for transfer.

**6. Corporations ⬄542(4)—Corporation to whom another corporation transfers assets without having paid debts takes property transferred subject to lien for debts.**

Where one corporation transfers all of its assets to another, and practically ceases to exist without having paid its debts, the purchasing corporation takes the property so transferred subject to lien or charge in favor of the creditors of the selling corporation, which a court of equity will enforce.

**7. Corporations ⬄549—Creditors of defunct corporation, transferring its assets in consideration of assignor's assuming liabilities, may sue to enjoin disposal of assets without reducing claim to judgment.**

Suit by creditors to enjoin assignee of assets of defunct corporation from disposing thereof and for a receiver, *held* maintainable without having first reduced claims to judgment, in that creditors could sue in equity to enforce assignee's liability under assumption of assignor's liabilities as well as to enforce equitable

lien or trust arising in favor of creditors on transfer of corporate assets without payment of debts.

**8. Parties ☞6(2)—"Indispensable party" is one having such interest in subject-matter that final decree cannot be rendered without affecting his interest.**

An "indispensable party" to a suit is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to suit without radically and injuriously affecting his interest, or without leaving controversy in such situation that its final determination may be inconsistent with equity and good conscience.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.

**9. Corporations ☞549—Defunct corporation, transferring assets to another corporation assuming liabilities, held not indispensable party to creditor's suit to enjoin disposal of assets.**

Defunct corporation, having transferred all its assets to another corporation assuming in consideration thereof liabilities of assignor, *held* not an indispensable party to suit against asignee by creditors to enjoin disposal of assets and for a receiver to take charge of same for liquidation and distribution to creditors.

**10. Corporations ☞549—Joinder of creditors of defunct corporation in suit to enjoin assignee disposing thereof held not "misjoinder."**

Joinder of creditors in suit to enjoin corporation to whom assets of defunct corporation were assigned from disposing thereof and for a receiver to take charge of assets for liquidation and distribution, *held* not a "misjoinder," in that they claimed a common interest, and one common also with other creditors of assignor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misjoinder.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit by Samuel F. Cobb and others against the Interstate Mortgage Corporation. From an order of dismissal, complainants appeal. Reversed and remanded.

W. Conwell Smith and Isaac Lobe Straus, both of Baltimore, Md. (Joseph L. Donovan, of Ellicott City, Md., and C. R. Wattenscheidt, of Baltimore, Md., on the brief), for appellants.

J. Purdon Wright, of Baltimore, Md., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. [1] Samuel F. Cobb, De Wilton C. Parlett, and Howard F. Scott, citizens of Maryland, were complainants in the court below, and the Interstate Mortgage Corporation of Delaware with its principal office in New York was defendant. We shall refer to them in this opinion in accordance with the positions which they occupied there. The appeal is from an order dismissing the bill of complaint; and the only question presented is whether, considering the allegations of the bill to be true, such a case is stated as entitles complainants to equitable relief, for it is settled that on such motion the averments of the bill must be taken as admitted. Hill v. Wallace, 259 U. S. 44, 61, 42 S. Ct. 453, 66 L. Ed. 822.

The bill was filed by complainants in behalf of themselves and any other creditors of the Bankers' Mortgage Company, a Maryland corporation, who might desire to intervene. It set forth that complainants had been induced by fraud and deceit to subscribe to, and pay for, stock in the Bankers' Mortgage Company, which was absolutely worthless, and that, because of the fraud and deceit practiced upon them, they had claims against that company for the amounts which they had paid to it; the total of their claims being in excess of $10,000. It alleged that all of the assets of the Bankers' Mortgage Company had been transferred to the defendant, Interstate Mortgage Corporation, and that, in connection with the transfer, the defendant had "expressly assumed all the liabilities of the Bankers' Mortgage Company to its creditors, including the plaintiffs and all other subscribers to its stock in the same situation and plight as the plaintiffs." It described a part of the assets transferred to defendant, and prayed that defendant be enjoined from disposing of them, and that a receiver be appointed to take charge of same to the end that they might be liquidated and distributed to creditors under order of court.

With respect to the transfer of the assets of the Bankers' Mortgage Company to defendant, it was alleged, not only that in connection therewith defendant had expressly assumed the liabilities of the Bankers' Mortgage Company, including the liability to complainants, but also that defendant controlled the action of the Bankers' Mortgage Company through stock ownership, and had secured the transfer fraudulently, knowing that the Bankers' Mortgage Company was insolvent, and intending to get possession of its assets in fraud of the rights of complainants, and without intending to pay the liabilities which it had assumed. The bill further alleged that, by placing the assets in the possession of a

foreign corporation without a process agent in the state, it was intended to place them beyond the reach of complainants and other creditors of the Bankers' Mortgage Company.

As to the status of the Bankers' Mortgage Company, the bill alleged that it had become a defunct corporation, "with its organization disintegrated, its assets disposed of, its corporate and business operations ended, a vote for its dissolution passed, and its officers and promoters had entered the service of the defendant corporation, or had fled from the state of Maryland, its offices and office furniture, books, papers, and effects being taken into the possession of the defendant company, so that any proceeding or proceedings whatsoever, whether by suit at law or in equity, against the said Bankers' Mortgage Company, would necessarily have been and are and will be wholly futile and ineffective." It contained also the further allegation: "That ever since the 16th of July, 1923, the said Bankers' Mortgage Company, being then and having been theretofore, insolvent, has failed and ceased to maintain its corporate organization and existence, has discontinued and abandoned its corporate business, has, as herein stated, whilst insolvent, aliened all its property and assets to the defendant corporation, and has ceased to exist."

The appeal from the order sustaining the motion to dismiss the bill presents three questions for our consideration: (1) Can complainants sue in equity to enforce against defendant, or against the property transferred to it by the Bankers' Mortgage Company, claims against that company which have not been reduced to judgment? (2) Is the Bankers' Mortgage Company a necessary party to the suit? and (3) Is the joining of the three complainants a misjoinder of parties? We shall consider these in order.

[2, 3] On the first question the position of defendant is that a suit in equity cannot be maintained by creditors to set aside a fraudulent conveyance, or to subject property of the debtor to the satisfaction of their claims until judgment has been obtained and execution returned unsatisfied. Undoubtedly, this is the rule of the federal courts in ordinary cases. Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 977, 37 L. Ed. 804; Scott v. Neely, 140 U. S. 106, 11 S. Ct. 712, 35 L. Ed. 358; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113; D. A. Tompkins Co. v. Catawba Mills (C. C.) 82 F. 780. This rule, however, is only applicable where a complainant's right to equitable relief depends upon a showing that he has exhausted his remedies at law, and is without remedy save in equity. It has no application to a case where his only remedy is in equity, as where he seeks to establish a liability which only equity will recognize or to enforce an equitable lien or a trust. Day v. Washburn, 24 How. 352, 16 L. Ed. 712; Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004. In this case, we think, complainants assert rights against defendant under its assumption of the liabilities of the Bankers' Mortgage Company, and also rights in the property transferred by that company which only a court of equity can enforce, and consequently the obtaining of judgment and the return of execution need not be shown.

[4] The bill alleges, and as stated above we must assume the allegation to be true, that in connection with the transfer made to it the defendant expressly assumed all of the liabilities of the Bankers' Mortgage Company to its creditors, "including plaintiffs and all other subscribers to its stock in the same condition and plight as the plaintiffs." This assumption of liabilities as a consideration for the transfer of assets conferred no right upon the creditors of the Bankers' Mortgage Company to sue defendant upon their claims at law, but it did give them the right to sue defendant in equity to enforce in their own behalf the promise made to the Bankers' Mortgage Company for their benefit. Such suit is allowed by equity upon the theory that as a result of the contract and transfer the defendant became the principal debtor, and the Bankers' Mortgage Company a mere surety, and that to avoid circuity of action equity will enforce the obligation of the principal debtor for the benefit of the creditor. Keller v. Ashford, 133 U. S. 610, 623, 10 S. Ct. 494, 33 L. Ed. 667; Johns v. Wilson, 180 U. S. 440, 21 S. Ct. 445, 45 L. Ed. 613; Silver King Coalition Mines Co. v. Silver King Consol. Mining Co. (C. C. A. 8th) 204 F. 166, Ann. Cas. 1918B, 571; Blackmore v. Parkes (C. C. A. 6th) 81 F. 899; Goodyear Shoe Machinery Co. v. Dancel (C. C. A. 2d) 119 F. 692; s. c. (C. C.) 120 F. 839; s. c. (C. C.) 137 F. 157; s. c. (C. C. A.) 144 F. 679; Philadelphia Rubber Works Co. v. United States Rubber Reclaiming Works (D. C.) 276 F. 613, 615.

In the case of Silver King Coalition Mines Co. v. Silver King Consol. Mining Co., supra, which involved the right to sue in equity to enforce the promise of the transferee of the property of a corporation to pay its obligations, Judge Sanborn, speaking for the Circuit Court of Appeals of the Eighth Circuit, stated the rule as follows:

"When a grantee contracts with his grantor to pay the latter's debt or obligation in payment, or in part payment, for the conveyance, the creditor or obligee may accept and appropriate that contract to himself and maintain a suit in equity to enforce it. In that event the grantee becomes the principal debtor and the grantor the surety, and the creditor's suit stands on the equitable doctrines that the creditor may have the benefit of any security or obligation given by the principal debtor to the surety, and that to avoid circuity of action—that is to say, an action by the creditor against the original debtor and a subsequent action by the latter against his grantee—the creditor may be, and is in equity, substituted for the promisee, the grantor."

[5, 6] And not only is the bill cognizable because it seeks to enforce against the defendant an obligation enforceable only in equity, but also because it asks that the assets transferred be applied to the satisfaction of the claims of creditors under a lien enforceable in equity. When these assets were transferred to defendant under a promise on defendant's part to assume the liabilities of the Bankers' Mortgage Company, though no express lien was retained to secure the payment of the debts thus assumed, yet an equitable lien arose, and the assets transferred were chargeable with the payment of the liabilities, the assumption of which constituted the consideration for the transfer. Blackmore v. Parkes, supra, at page 900. Whether the so-called "trust fund doctrine" be strictly followed or not, there can be no doubt, we think, that, where one corporation transfers all of its assets to another, and practically ceases to exist without having paid its debts, the purchasing corporation takes the property so transferred subject to a lien or charge in favor of the creditors of the selling corporation, which a court of equity will enforce. Luedecke v. Des Moines Cabinet Co., 140 Iowa, 223, 118 N. W. 456, 32 L. R. A. (N. S.) 616; 5 Thompson on Corporations, par. 6547; 7 Fletcher, Cyclopedia Corporations, par. 4757; R. R. Co. v. Howard, 7 Wall. 392, 409, 19 L. Ed. 117; Kansas City Ry. v. Guardian Trust Co., 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579; Lowther et al. v. Lowther Kauffman Oil & Coal Co., 75 W. Va. 171, 83 S. E. 49; Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Baker Motor Vehicle Co. v. Hunter (C. C. A. 2d) 238 F. 894; Safety Car Lighting & Heating Co. v. U. S. Light & Heating Co. (D. C.) 2 F.(2d) 384.

In B. & O. Tel. Co. v. Interstate Tel. Co. (C. C. A. 4th) 54 F. 50, this court had under consideration a case in which it appeared that the Baltimore & Ohio Railroad Company had sold the property of a telegraph company which it controlled, and had received and appropriated the proceeds of sale. In holding that the fund so derived could be reached by the other creditors of the telegraph company, the court, speaking through Judge Simonton, said:

"The Baltimore & Ohio Railroad Company, using this control, sold the whole of the property operated, controlled, managed, and owned by the Baltimore & Ohio Telegraph Company to the Western Union Telegraph Company, and received and appropriated the proceeds of the sale. Thereupon the telegraph company became and was totally insolvent. As this telegraph company was a corporation, under the circumstances stated, its property and assets were a trust fund for the payment of all of its creditors. Curran v. Arkansas, 15 How. 304 [14 L. Ed. 705]; Sawyer v. Hoag, 17 Wall. 620 [21 L. Ed. 731]. When, therefore, the Baltimore & Ohio Railroad Company took possession of, controlled, and appropriated this property and its proceeds, it took them impressed with these trusts, and is bound by them. This result follows, whether it acted as sole beneficial owner of all its stock, or as creditor who had made large advances, or as principal who had placed large and valuable assets in the hands of its agent, as ostensible owner, and thus secured its credit, or as vendor who had sold on credit without taking mortgage security, or as lessor who had entered upon the possession of its lessee."

[7] Since, therefore, this suit is maintainable to enforce in equity the liability of defendant under its assumption of the liabilities of the Bankers' Mortgage Company, as well as to enforce the equitable lien or trust which arose in favor of the creditors of the Bankers' Mortgage Company when, without paying its debts, it transferred its entire assets to defendant and practically ceased to exist, no showing of exhaustion of remedies at law is necessary. As said by Mr. Justice Strong, speaking for the Supreme Court in Case v. Beauregard, supra:

" * * * It may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. Tappan v. Evans, 11 N. H. 311; Holt v. Bancroft, 30 Ala. 193. Indeed, in those cases in which it has been held that obtaining a judgment, and issuing an execution is necessary before a court of equity can

be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien. And when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien, either by judgment or execution. But when the bill asserts a lien, or a trust, and shows that it can be made available only by the aid of a chancellor, it obviously makes a case for his interference." ·

See, also, Wyman v. Wallace, 201 U. S. 230, 242, 26 S. Ct. 495, 50 L. Ed. 738; George v. Wallace (C. C. A. 8th) 135 F. 286, 292; Fraser v. Cole (C. C. A. 7th) 214 F. 556; Okmulgee Window Glass Co. v. Frink (C. C. A. 8th) 260 F. 159.

[8] The next question is whether the Bankers' Mortgage Company is an indispensable party to the suit; and, in considering this question, the first inquiry is what constitutes an indispensable party. We have been able to find no better answer to this inquiry than what was said by Judge Sanborn in the Silver King Coalition Mines Co. Case, supra (204 F. at 169), quoted in part in brief of counsel for appellee, as follows:

"An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or subject-matter which is separable from the interest of the other parties before the court, so that it will not necessarily be directly or injuriously affected by a decree which does complete justice between them, is a proper party to a suit. But he is not an indispensable party, and if his presence would oust the jurisdiction of the court the suit may proceed without him."

[9] In no sense, we think, can the Bankers' Mortgage Company be said under this definition to be an indispensable party. It cannot be said that a decree herein cannot be rendered without radically and injuriously affecting its interest, for it has no interest to be affected, having transferred all of its assets to the defendant, which in turn has assumed all of its obligations. A decree herein will affect the interests of defendant, therefore, but cannot possibly affect the interests of the Bankers' Mortgage Company. For the same reason it cannot be said that, without the presence of the Bankers' Mortgage Company, the controversy will be left in such situation that

its final determination may be inconsistent with equity and good conscience. No reason has been suggested, and we can think of no reason, why any result which may be reached in this case would be inequitable or unjust because of the Bankers' Mortgage Company not being bound by the decree. No such situation can arise as complainants' establishing a claim for a larger amount against defendant than defendant could establish against the Bankers' Mortgage Company; for, whatever the liability established by complainants, defendant must pay it with no right of recovery over against that company, which, moreover, has nothing from which recovery might be satisfied even if the right existed. The Bankers' Mortgage Company is a mere name, without assets and without organization; the defendant being the real and only party interested in defending the suit. We do not think that the jurisdiction of the court is defeated by the failure to join such corporation as defendant, when by the utmost stretch of the imagination no purpose can be suggested which would be served by its joinder.

The same point involved here was before the Circuit Court of Appeals of the Eighth Circuit, in the Silver King Coalition Mines Co. Case, from which we have quoted, and the necessity for joinder was denied. Dancel v. Goodyear Shoe Machine Co. supra (see [C. C.] 137 F. 157, and [C. C. A.] 144 F. 679) was a suit in equity to recover from a corporation to which all of the assets of another corporation had been transferred, and which, as in this case, had assumed all the liabilities of the other corporation. The same point was raised there as here, that the transferring corporation was a necessary party to the suit. The Circuit Court of Appeals of the Second Circuit, in affirming the right to proceed without joining that corporation, said:

"It is manifest from the record that the Connecticut company is de facto, if not de jure, defunct; it can have no possible interest in the controversy; and, even if not actually dissolved, its presence on the record can serve no useful purpose, even were it possible to reach it with process."

See, also, Keller v. Ashford, 133 U. S. 610, 626, 10 S. Ct. 494, 33 L. Ed. 667; Bank of Commerce & Trusts of Richmond, Va., v. McArthur et al. (C. C. A. 5th) 256 F. 84, 86.

We have carefully considered the decision in Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 13 S. Ct. 691, 37 L. Ed. 577, and, while there is a surface resemblance between that case and the case at bar, we think that

they are fundamentally different, and that the principles there decided are not controlling here. That was a suit to enforce the liability of stockholders among whom the corporation had distributed its assets in fraud of its creditors. We think that there is a manifest difference between such a case and one where, as in the case at bar, the assets of one corporation are transferred to another on an agreement that the latter assume its liabilities. The question presented here upon the allegations of the bill, in its final analysis, comes to this: Is equity powerless to grant relief to the creditors of an insolvent and defunct corporation whose property has been fraudulently obtained by a foreign corporation by control exercised through stock ownership, where it is alleged that the foreign corporation which has assumed its liabilities has no intention of making payment but, on the contrary, is about to remove from the state the assets transferred to it for the purpose of defeating the rights of creditors? Or, to state the question in another way, is relief in such case to be denied until the property is removed from the jurisdiction, while complainants are seeking to obtain judgments at law against a corporation which has no assets, and the liabilities of which have been assumed by the corporation against which relief is sought, or because complainants have failed to join as a party the defunct corporation whose joinder could serve no imaginable purpose? As has been well said, the arm of equity is not shortened or palsied; and in the light of the decisions above cited we have no doubt of the power to grant relief under the circumstances set forth in the bill.

[10] We see no merit in the point as to misjoinder. Complainants claim a common interest, and one common also with other creditors of the Bankers' Mortgage Company, in the assets transferred by it to the defendant. The suit is brought in behalf of themselves and such others of the creditors as may desire to intervene. We think that there can be no question that this was the proper practice. Day v. Washburn, 24 How. 352, 16 L. Ed. 712; Talley v. Curtain (C. C. A. 4th) 54 F. 43; Pomeroy, Equitable Remedies, par. 894; 5 Equity Jurisprudence, par. 2317, p. 5137.

For the reasons stated, we think that the learned district judge erred in dismissing the bill, and the order dismissing same is accordingly reversed, and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.