AMERICAN EQUITABLE ASSURANCE COMPANY OF NEW YORK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44332. Promulgated December 8, 1932.

248

*LeRoy B. Iserman, Esq.,* and *Wendell P. Barker, Esq.,* for the petitioner.

*E. A. Tonjes, Esq.,* for the respondent.

OPINION.

BLACK: At the hearing and by brief counsel for the respondent based his entire contention as to the transferee liability of petitioner upon the contract liability, if any, of the petitioner to pay the tax in question, resulting from its assumption of certain debts and liabilities of Norwegian Atlas in the contract of May 25, 1926. Respondent contends that petitioner's agreement to pay the tax involved in this proceeding was a part of the very consideration for the assets which it received from the Norwegian Atlas. In *Wolf Mfg. Industries, Bankrupt, etc.* v. *United States*, 56 Fed. (2d) 64, the court said:

We have observed that the only consideration for the transfer of the corporate assets to the trustees was the agreement by the latter to pay the debts and discharge the liabilities of the corporation, and that the property received in trust was to be devoted first of all to the discharge of such debts and liabilities. Upon such written contract, under the statutes of Illinois and Indiana, actions are barred in 10 years. Within that time the Government filed its claim in the court of bankruptcy, showing that there had been legally established a tax liability against the corporation in the sum claimed.

Both Illinois and Indiana recognized the rule that third persons for whose benefit a contract is made may bring action thereon. (See *Commercial* v. *Kirkwood*, 172 Ill., 563; *Dean* v. *Walker*, 107 Ill. 540; *Chicago Title & Trust Co.* v. *Central Trust*, 312 Ill. 396; *Hess* v. *Lackey*, 191 Ind. 107; *Tinkler* v. *Swaynie*, 71 Ind. 562; *Ransdel* v. *Moore*, 153 Ind. 393.) And despite what may be the rule in various other Commonwealths, the same rule has long abided in the Federal courts. (See *Hendrick* v. *Lindsay*, 93 U. S. 143; *Princes Amusement Co.* v. *Wells*, 271 Fed. 226 (C. C. A. 6, certiorari denied, 254 U. S. 701); *Gibson* v. *Victor Talking Machine Co.*, 232 Fed. 225; *Barker* v. *Pullman*, 124 Fed. 555 at 567; *Blackmore* v. *Parkes et al*, 81 Fed. 899 (C. C. A. 6); *In re Dresser*, 135 Fed. 495 (C. C. A. 2); *Millett* v. *Omaha Bank*, 80 Fed. (2d) 655 (C. C. A. 8). It follows that the Government, having established the legal liability of the corporation, was entitled to file and have allowed its claim in the bankrupt estate of the parties who assumed and agreed to pay such liabilities. Furthermore, it was the court's duty, sitting as a court in equity, to treat the property of the bankrupt as a trust fund for the benefit of the creditors of the corporation according to their respective priorities.

Thus it seems clear that in such a case the Government has a cause of action against the purchaser of assets who assumes the liability for taxes of the transferor, which it may assert in a proper proceeding in court.

Section 280 of the Revenue Act of 1926, as has been often said by the Board and the courts, creates no new liability, but simply gives to the Government the right to enforce, by the methods provided therein, an existing liability which it may have at law or in equity against the transferee. Petitioner in its brief, in arguing against

its own liability in the instant case, cites certain Board and court cases where it was held that the respondent had not sustained the burden of proof put upon him by the statute to show the liability of the transferee. An examination of these cases will show that they were cases where the respondent failed to show the insolvency of the transferor or the value of the assets transferred and matters of that sort which were necessary elements of his case. These were all cases where the respondent relied entirely upon an equitable liability against the transferor, based on the trust fund doctrine. None of these cases were such as we have in the instant case, where there was a contractual agreement on the part of the transferee to pay the tax. Therefore, we do not believe the cases cited by petitioner are in point to sustain the contention which it makes.

In the third paragraph of the contract of May 25, 1926, quoted in our findings of fact, the petitioner agreed to assume and pay every obligation, insurance or otherwise, of the Norwegian Atlas, now outstanding and known or unknown, which had arisen against it in connection with its business transacted through its United States branch, and in the tenth paragraph of the contract it agreed " to pay all taxes, Federal, state or otherwise, if and when determined, for all years prior to the year 1926," except for the first five months of the year 1926, which Norwegian Atlas agreed to pay. This we think creates a liability on the part of the petitioner to the United States which it may enforce by a proper court action, and, being such a liability, it may be enforced against petitioner under section 280 of the Revenue Act of 1926. Petitioner is a transferee of the property of the taxpayer, the Norwegian Atlas, and the value of the property is far in excess of the tax involved in this proceeding, and a part of the very consideration for the property which petitioner received from the transferor was an agreement to pay the taxes involved in this proceeding. At least that is the construction which we place upon the meaning of the contract between petitioner and the Norwegian Atlas.

The question of the enforcement of a purely contractual liability was before us in *Reid Ice Cream Corp.*, 24 B. T. A. 823, in which the petitioner entered into a contract with the taxpayer by which the petitioner transferee bought out another corporation under a contract which provided that the purchaser should assume the liabilities of the seller as of a certain date and subsequent liabilities incurred in the ordinary routine of business. Following the sale, the seller distributed the entire purchase money to its stockholders. The tax return of the seller showed a tax liability resulting from the profits of the sale, which the respondent proposed to assess and collect from the purchaser, Reid Ice Cream Corporation, under section 280, basing his action on the promise to assume and pay the liabilities of the

seller. We sustained the contention of the respondent and held that the taxes in question were included in the contract and that a purely contractual liability of the transferee could be enforced under section 280. We adhered to the same general rule in *Richards & Hirschfield*, 24 B. T. A. 1295.

*Reid Ice Cream Corp.*, *supra*, was reversed in *Reid Ice Cream Corp.* v. *Commissioner*, 59 Fed. (2d) 189, but not upon the ground that a contractual liability could not be enforced under section 280. The court held that the Board was in error in holding that the contract involved in that proceeding was broad enough to cover the taxes which resulted from the *sale itself*. The court said in part:

Where as in the instant case, a corporation sells its business, the properties sold are the only transferred assets and there is no claim against those transferred assets so far as the income tax on any profit on the sale is concerned. That claim arises only on the payment of the price and relates only to the price received and not in any sense to the transferred assets.

and, again:

Here there was no taxable fund until after the sale, and the petitioner never partook of a taxable fund because no tax liability arose except upon receipt by the seller of the purchase price. That, and not the assets sold, constitutes the taxable fund. There could not be any claim against the transferred assets. Therefore section 280 creates no liability; it is remedial and presupposes a liability for the enforcement of which it is designed to furnish a remedy.

The opinion of the court, as we construe it, does not conflict with the rule announced by us in *Reid Ice Cream Corp.*, *supra*, and *Richards & Hirschfield*, *supra*, to the effect that where the purchaser assumes by contract the payment of taxes *already existing*, as part of the consideration for the transferred assets, and fails to pay that part of the agreed consideration, collection of such taxes may be enforced under section 280. Therefore, we hold that petitioner is liable as a transferee under the provisions of section 280 of the Revenue Act of 1926.

*Limitations.*—Petitioner pleads and relies on the 4-year statute of limitations. The return of the Norwegian Atlas was filed July 3, 1923, and the notice of deficiency was mailed July 2, 1927, which was within four years. Within 60 days thereafter a petition was filed with this Board seeking a redetermination, which proceeding was dismissed by order of the Board on June 11, 1929, for lack of jurisdiction. The petition had been filed in the name of Norwegian Atlas, but was signed by an official of American Equitable as the successor of the United States Branch of Norwegian Atlas. The 60-day notice to petitioner was mailed March 15, 1929.

Section 280(b) (1) expressly provides that, " The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows: (1) Within one year after the expiration of the period of limitation for assessment against the taxpayer."

Section 277 (b) of the Revenue Act of 1926, as amended by section 504 of the Revenue Act of 1928, expressly provides that the period during which the Commissioner is prohibited from making an assessment or instituting distraint or proceedings in court, or while a proceeding in respect of the deficiency is pending before this Board, and 60 days thereafter, shall not be counted in considering the running of the statute of limitations.

In view of these statutes, it is clear that the statute had not run in the instant proceeding, because the deficiency notice to petitioner was sent before the dismissal of the Norwegian Atlas proceeding. *Wayne Body Corp.*, 22 B .T. A. 401. Cf. *Wells-Elkhorn Coal Co.*, 27 B. T. A. 198.

*Norwegian Atlas Deductions.*—Petitioner claims the right to go into the merits of the deductions which were claimed by Norwegian Atlas and disallowed by the respondent. Petitioner has this right. *Wayne Body Corp., supra.* Relative to this matter, the burden of proof is on the petitioner. Petitioner contends that respondent should allow as a deduction from gross income of Norwegian Atlas in 1922 the amount of these reinsurance claims, aggregating $74,115.41, either as losses or bad debts. While it is true that all three reinsurers were placed in liquidation in 1921, the books of Norwegian Atlas at the close of 1922 showed the aggregate of $74,115.41 as reinsurance receivable, and it does not appear that these claims were ascertained to be worthless and charged off during the taxable year. On the contrary, it is vigorously argued by petitioner in this proceeding that these claims were valuable assets retained by Norwegian Atlas, out of which the United States could and should have collected the tax in controversy instead of enforcing it against the petitioner under section 280. In addition it may be observed that it is alleged in the petition that " Subsequent to the filing of its 1922 tax return, the Norwegian Company collected a substantial proportion of these dividends, no part of which has been received by petitioner." In the evidence of Wendell P. Barker, general counsel and vice president of the petitioner, it is stated, " I know that the company today possesses certain assets in the United States in the shape of certain claims or choses in action which they are today endeavoring to enforce and I know that since this contract was signed they have taken down and collected a substantial sum of money in connection with these claims which was reserved from this contract."

This allegation of the petition and evidence quoted is incompatible with a theory of either a loss or worthless debt in 1922, and we sustain respondent in disallowing these claimed deductions.

*Decision will be entered for the respondent.*