## 13194

### EX PARTE RICE *ET AL.*
### IN RE: LIQUIDATION OF BAMBERG BANKING CO.

(159 S. E., 492)

78

*Messrs. Kearse & Kearse,* for appellant,

*Mr. E. H. Henderson,* for respondent,

July 3, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE OSCAR E. HODGES.

The Bamberg Banking Company was declared insolvent, and the South Carolina Savings Bank appointed receiver on February 7, 1931, to liquidate its affairs.

At some time prior to the closing of the bank, A. H. Rice executed and delivered to said bank, two promissory notes in the total sum of $2,072.41, payable January 15, 1931. Both notes were indorsed by A. Rice and contained the following provision: "I promise to pay to the order of Bamberg Banking Company, Bamberg, South Carolina, without off-set." The indorser had on deposit in said bank a checking account in excess of the amount due on these notes and he personally was not indebted to the bank in any amount. It was admitted that the maker of the notes was insolvent, or at least that he was unable to pay the notes, and that the bank or the receiver would have to look to the indorser, A. Rice, or his estate for the payment. Some time after the bank closed, A. Rice died and his administratrix

and the maker of the notes, A. H. Rice, asked the receiver to allow a set-off. The receiver declined their request on the ground that the parties had agreed to pay the notes without offset, whereupon a petition was filed in the main cause praying for an order directing the receiver to allow the offset. The receiver filed a return to the petition admitting the material facts of the petition, but denied that the petitioners were entitled to the offset.

The matter came on for a hearing before Honorable Thos. M. Boulware, Special Presiding Judge at chambers, and he filed an order dated April 14, 1931, sustaining the receiver's position, and this appeal challenges the correctness of that order.

The appellant has very concisely stated the question involved as follows: "Do the words 'without off-set' used in a negotiable note prevent the maker or endorser from setting off their deposits against the amount due on the note when the original payee bank is the owner and holder of the note and is insolvent."

It is now well established in this State that where a bank is insolvent and a depositor is indebted to the insolvent bank he is entitled to offset his deposit against his indebtedness. It is unnecessary to cite authorities to sustain this proposition. It appears well established in other jurisdictions that this right of setoff extends to the indorser or surety, where the maker is insolvent or is unable to pay the debt himself. Counsel on both sides in this case very properly concede this to be the general rule, but counsel for the respondent contends that "this right of a depositor, however, may be contracted away, or the depositor may waive the right to the off-set," and that the maker and the indorser, by inserting the words "without off-set" in the notes in question, have waived the right of offset.

The question presented has apparently not been adjudicated by our own Courts. At any rate, no case deciding the question has been cited, or called to our

attention, and as far as our investigation has gone there appears to be an absence of any direct adjudication of the matter. Consequently, we shall have to resort to text-writers and Courts of other jurisdictions for light on the subject.

The words in notes "without off-set" and "without defalcation" appear to have been used in certain states at some time in the past for the purpose of making them negotiable "in the sense of cutting off defenses between the original parties, as against a holder in due course." Brannan's Negotiable Instrument Law (4th Ed.), pp. 65, 66.

In Bigelow on Bills, Notes and Checks (3d Ed. Lile), a recognized authority on the law of negotiable instruments, in discussing this interesting question, Section 551-a says: "The precise meaning of the phrases 'without off-set' or 'without defalcation,' frequently used in negotiable notes, either separately or in combination, is not entirely clear. By the better view they are not to be construed literally as waiving defenses between the parties, or binding the maker to pay at all events even to holders with notice or without value; but rather as an antiquated method of emphasizing the intention of the maker that the instrument shall be negotiable. They appear to have been introduced originally to meet certain statutory provisions in several of the States with reference to the negotiability of promissory notes. The history of the phrases warrants the conclusion that standing alone, and in the present state of the law of negotiable paper, they are of no special legal significance."

"The words 'without defalcation' in a negotiable bill or note are now mere surplusage and without meaning under the Negotiable Instrument Law, and hence do not constitute a waiver of rights of set-off or counter-claim." Brannan, N. I. L., page 55. The case of *First National Bank of Rocky Ford v. Lewis,* 57 Colo., 125, 139 P., 1102, 1103, is cited to sustain the text.

The Court, in the case of *First National Bank of Rocky Ford v. Lewis, supra,* which was a case where the words

"without defalcation" were inserted in the note, in discussing the effect of those words says: "The plaintiff's remaining contention, that because of the presence in the note of the expression 'without defalcation' all rights of set-off are waived, cannot be upheld, as these words are nothing more than a relic of pronounced antiquity in the law, a mere remnant of common law forms, and wholly without meaning in the light of modern usage, under the practically uniform provisions of the negotiable instrument law now in force in this and many other states. A negotiable promissory note is defined by that law to be an unconditional promise or order in writing and signed by the maker or drawer, to pay a certain sum of money to order or bearer on demand or at a fixed or determinable future time. While the words 'without defalcation' may have had a use and meaning in the negotiation of written instruments in some distant past, they are now no more than mere surplusage. Our negotiable instrument act stamps an instrument negotiable or non-negotiable according as it conforms or fails to conform to the requirements of that act. It must be a written instrument which provides for the unconditional payment of a fixed sum on demand or at a fixed or determinable future time. The words 'without defalcation' add nothing whatever to the force and effect of such an instrument, either before or after maturity."

Again in the case of *Harmanson v. Bain,* 1 Hughes, 391, 11 Fed. Cas., 539, No. 6,073, which was a Federal District Court opinion, the Court held that the words "without offset" in a note had no force and effect as between the maker and the payee, and this case appears to be clearly in point here. The Court, discussing the question, among other things says: "But it could not have been legally intended by either of the two parties, that in the event of a liquidation in Court of the affairs of the society the defendant should not have the right to set off, against the note he owed payable in greenbacks, his own claim against the

society at its just valuation. * * * As to the words 'without offset' used in the body of the negotiable note, they are to be read as if they were 'without offset as against a holder by indorsement.' Their sole purpose and effect is to give negotiability and credit to the paper. They are not treated by the Courts as having any effect between the maker and the original payee of the paper."

There are a few other cases to the same effect, but we think it is unnecessary to prolong this opinion by citing or discussing them.

The learned Special Circuit Judge appears to have relied mainly upon the case of *Lutz v. Williams,* 79 W. Va., 609, 91 S. E., 460, L. R. A., 1918-A, 76, and we have no fault to find with the principle decided in that case. The authorities are practically agreed upon the rule of law declared in that case in substance that a bank which accepts a deposit of money made by a depositor for a special purpose, under an agreement that it will pay the amount when needed for that purpose, cannot rightly appropriate such deposit to discharge the depositor's indebtedness to it. Our own case of *Simmons v. Bank,* 41 S. C., 190, 19 S. E., 502, 44 Am: St. Rep., 700, recognizes this doctrine.

We do not think the case relied upon by respondent is controlling here. In that case the deposit in the bank was for a special purpose, and the bank, by accepting the deposit expressly or impliedly, bound itself not to apply it to the indebtedness of the depositor. It was an enforceable agreement between the depositor and the bank, and consequently the bank, under its agreement, was legally bound to respect its contract with the depositor and it could not disregard the same without the consent of the depositor. In this case, as we have seen, there is no agreement between the maker of the note and the bank, which has any force and effect as between the parties to the instrument, under the decided weight of authority. The effect of the

contract in this case is just the same as if the words "without off-set" were not present.

The learned counsel for respondent has contended in his argument that it is not the duty of the Court to make contracts for people, but to enforce them as they are written. We are not unmindful of this well-established principle, but there is another well-known rule of law which should not be overlooked, and that is, it is the duty of the Courts to construe contracts and ascertain their meaning and give full force and effect to the intention of the parties, if it can reasonably be done. But in this case the words "without off-set" in these notes cannot be given any legal effect under the decisions of the Courts in other states. In the absence of any authority in this State, we think that we should respect and follow these cases, when they appear to be supported by both reason and authority.

The order appealed from is reversed, and the case is remanded with directions to allow the offset claimed by the petitioner.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, STABLER and BONHAM concur.

MR. JUSTICE CARTER disqualified.